**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **STEVEN WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIV-07-696-R** |
| | ) | |
| **CITY OF OKLAHOMA CITY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**O R D E R**

This matter comes before the Court on the four motions to dismiss filed separately by

the Defendants.  Because the issues are intertwined, the Court will consider the motions in

this single order, although each motion shall be considered in turn.  Defendants assert that

despite filing an amended complaint that the Plaintiff has failed to remedy the defects noted

by the Court in its order dated September 7, 2007.  Having considered the parties'

submissions, the Court finds as follows.

**Motion to Dismiss Standard**

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all

well-pleaded allegations as true and views them in the light most favorable to the plaintiff.

*Johnson v. Johnson*, 466 F.3d 1213, 1214 (10th Cir.2006).  The Court "must determine

whether the complaint sufficiently alleges facts supporting all the elements necessary to

establish an entitlement to relief under the legal theory proposed." *Forest Guardians v.*

*Forsgren*, 478 F.3d 1149, 1160 (10th Cir.2007).

> Although the plaintiff must provide "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action," *Bell Atl. Corp. v. Twombly*, --- U.S. ----, ----, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929, ---- (2007) (citation omitted), "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Padrus*, --- U.S. ----, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081, ---- (quotations and citations omitted) (omission in original).

*Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).  Construing the factual allegations in Plaintiff's Amended Complaint and all reasonable inferences therefrom in favor of the Plaintiff, the amended complaint alleges the following:

Defendant Randall was the attorney of record in condemnation proceedings instituted in 2002 by the City of Oklahoma City against Plaintiff.  As a result of the condemnation proceedings, on May 15, 2007, the City was granted a permanent easement over a portion of Plaintiff's property.  Defendants Hart, Byrne and Osborn are police officers for the City of Oklahoma City.  Thomas Hart was a supervisor at the time of the incidents giving rise to this litigation.  Defendant C-P Integrated Services, Inc. ("CPI"), entered into a contract with the City of Oklahoma City to install a drainage ditch, part of which was to run across Plaintiff's property.

Plaintiff further alleges that beginning in February 2007, the City, through Susan Randall, instructed CPI to begin working on Plaintiff's property, which was required by terms of the contract.  Employees of CPI entered onto Plaintiff's land, outside the scope of the temporary easement that had been granted to the City, leaving materials and equipment there.

Workers cut down trees located on Plaintiff's property, again outside the scope of the easement. CPI knew its workers were working outside the scope of the easement, and ignored Plaintiff's requests that they stop trespassing on his property.

Plaintiff contends that on March 8, 2007, he met with Steve Peters, a manager with CPI and discussed the trespassing. Mr. Peters admitted that he should have obtained permission for crews to access the site, but had failed to do so. Plaintiff told Peters he did not want employees to work on the property in areas where the City did not have a temporary easement. Employees continued to work on the property beyond the scope of the temporary easement.

On March 22, 2007, Plaintiff sent Steve Peters a fax demanding that materials and equipment be removed from the property. On March 28, 2007, the items were still there, as were employees, again working beyond the scope of the temporary easement. Plaintiff called the Oklahoma City Police Department and officers Byrne, Gray and Montoya arrived at the property. Plaintiff advised Defendant Byrne that the workers were trespassing because they were working outside the scope of the easement. Byrne spoke with the workers but refused to remove them because they were working on a project for the City. CPI employees continued working outside the scope of the easement.

Plaintiff required that Sergeant Gray contact a supervisor. While awaiting his arrival, an officer contacted the City Attorney's Office. Susan Randall directed the officers to permit the workers to remain on the property. Lieutenant Hart arrived at the property and spoke with his officers, informing Plaintiff that he was not concerned with the easement, but that

he would permit work to continue because the condemnation proceedings had been ongoing for years.

Plaintiff returned to the property later that afternoon and discovered workers removing more trees from the area outside the scope of the easement. Plaintiff called 911 and received a call back from Defendant Lori Osborn. Osborn advised him that she had spoken with other officers and that she would not be stopping the work on his property because the workers were City employees and Susan Randall had advised her not to do anything about the trespassing. Plaintiff alleges that Defendants Hart and Randall are final decision makers for the City of Oklahoma City.

Plaintiff subsequently went to the Hefner Division of the Oklahoma City Police Department and spoke with two officers who informed him that they would not be stopping the work, at the direction of Susan Randall. CPI continued working on the land, outside the scope of the temporary easement. The City never sought to condemn any additional portion of Plaintiff's property, and CPI's contract with the City and Susan Randall directed CPI to continue working despite the absence of an easement.

Plaintiff alleges that he is the only individual who has been treated in this manner by Defendants when easements were sought by the City. Plaintiff contends he is the only individual who objected to the request for easement and refused to settle. He contends that officers will arrest trespassers when they are not working on behalf of the City. Plaintiff alleges that the City has a policy of directing police officers to deny assistance to residents under these circumstances and a policy of directing workers who are performing work on

behalf of the City to take property belonging to residents who object to easements.  Plaintiff

contends the City has a policy in contested condemnation proceedings of permitting workers

to work on the City's behalf to trespass in an effort to pressure the landowner into settling

with the City.  As a result Plaintiff seeks damages under 42 U.S.C. § 1983 for the violation

of his equal protection and due process rights.  Plaintiff also seeks damages under state law

from CPI for trespass.

### Constitutional Claims

Each Defendant contends that Plaintiff has failed to allege sufficient facts to support

a constitutional violation.  Accordingly, because this theory is common to each motion to

dismiss, and because certain other defenses will become moot if Plaintiff has not alleged a

constitutional claim, the Court will address this issue first.

### Equal Protection

Plaintiff asserts that the facts as set forth in the amended complaint support two types

of constitutional claims: equal protection and due process.  Defendants argue that Plaintiff

has failed to plead an equal protection claim, under a class of one theory, because he has not

named persons who were similarly situated but treated differently.  Ultimately, in order to

prevail on his equal protection claim Plaintiff will be required to present evidence of exactly

who the similarly situated persons were and how in fact they were treated differently. *See*

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  However, at this stage, Plaintiff

is not required to identify those persons.  *See Longmoor v. Nilsen*, 285 F.Supp.2d 132,

(D.Conn. 2003).  The Court concludes that generally Plaintiff has sufficiently pled an equal

protection claim.  Accordingly, Defendants' motions to dismiss is denied with regard to

Plaintiff's equal protection claim.

**Procedural Due Process and Takings**

Plaintiff also  seeks damages under a theory that Defendants violated his due process

rights.  Plaintiff does not specify whether he believes that his substantive or his procedural

due process claims have been violated.  Accordingly, the Court will consider both types of

claims.  Additionally, Plaintiff's amended complaint alleges a policy of taking property that

belongs to residents who object to easements, implicating his rights under the fifth

amendment takings clause.  Having considered the parties' arguments, the Court concludes

that Plaintiff has failed to state a substantive due process claim and that his takings claim and

his procedural due process claims are not ripe for review.

To the extent Plaintiff is alleging that his property was taken without just

compensation in violation of the takings clause of the Fifth Amendment, such claim is not

ripe.[1]

> Before a federal court can properly determine whether the state has violated
> the Fifth amendment [takings clause], the aggrieved property owner must show
> first that the States deprived him of his property, and second, that the state
> refused to compensate him for his loss. *Miller v. Campbell County*, 945 F.2d
> 347, 352 (10th Cir. 1991) (following *Williamson County Regional Planning
> Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 194, 105 S.Ct. 3108, 3120, 87
> L.Ed.2d 126 (1985)) *Cert. denied*, 502 U.S. 1096, 112 S.Ct. 1174, 117 L.Ed.2d
> 419 (1992); *see*, *e.g.*, *National Advertising Co. v. City & County of Denver*, .
> 912 F.2d 405, 413-14 (10th Cir. 1990) (just compensation claim unripe where

---

[1] The Court may sua sponte raise the issue of ripeness, which impacts this Court's Article III
jurisdiction.  *See Utah v. United States Dept. of Interior*, 210 F.3d 1193, 1196 n. 1 (10th Cir. 2000).

plaintiff has not sought compensation under available inverse condemnation procedure.)

*Rocky Mountain Materials & Asphalt, Inc. v. Board of County Commissioners of El Paso County*, 972 F.2d 309, 310 (10th Cir.1992). Plaintiff apparently has not sought any compensation by filing inverse condemnation proceedings against the City for its alleged use of land in excess of the easement granted.[2] As such, his takings clause claim is premature.

Furthermore, because his procedural due process claim is based on the same facts, the Court concludes that it too is not ripe.

> When a plaintiff alleges that he was denied a property interest without due process, and the loss of that property interest is the same loss upon which the plaintiff's takings claim is based, we have required the plaintiff to utilize the remedies applicable to the takings claim. "It is appropriate in this case to subsume the more generalized Fourteenth Amendment due process protections within the more particularized protections of the 'Just Compensation Clause.'" *Miller*, 945 F.2d at 352. Accordingly, until a plaintiff has resorted to the condemnation procedures to recover compensation for the alleged taking, the procedural due process claim is likewise not ripe because it is in essence based on the same deprivation.

*Id.* at 311. Accordingly, Plaintiff's takings claim and his Fifth Amendment procedural due process claims are hereby DISMISSED WITHOUT PREJUDICE.

---

[2] Oklahoma statute permits a landowner to seek damages in an inverse condemnation action. *See Material Service Corp. v. Rogers County Com'rs*, 136 P.3d 1063 (Okla.Civ.App. 2006).

**Substantive Due Process**

The Court further concludes that Plaintiff has failed to plead a substantive due process claim against any Defendant. "[T]he standard for judging a substantive due process claim is whether the challenged government action would 'shock the conscience of federal judges.'" *Livsey v Salt Lake County*, 275 F.3d 952, 957 (10th Cir. 2001)(quoting *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (additional citations omitted)). The Court concludes that Plaintiff's allegations do not allege "a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking. . . ." *Id.* at 958. Accordingly, the motions to dismiss are GRANTED with regard to any SUBSTANTIVE DUE PROCESS claim that Plaintiff may have intended to pursue.

Accordingly, the sole claim remaining against any Defendant is Plaintiff's equal protection claim, and thus the Court must consider whether any additional defense raised by the various motions to dismiss is meritorious. The motions shall now be considered in turn.

**Defendant CPI**

Defendant CPI contends that Plaintiff's allegations are insufficient because it is not a state actor subject to liability under 42 U.S.C. § 1983. Defendant CPI further asserts that Plaintiff's state law trespass claim should be dismissed pursuant to 28 U.S.C. § 1367.

> To be under color of law, the deprivation of a federal right "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible" and "the party charged with the deprivation must be a person who may fairly be said to be a state actor ... because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v.*

*Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982).

*Yanaki v. Iomed, Inc.*, 415 F.3d 1204, 1207-08 (10th Cir. 2005)  *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir.2000); *see also, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)("To act under color of law does not require that the accused be an officer of the state. It is enough that he is a wilful participant in joint activity with the State and its agents")(internal citations and quotations omitted).   The Court concludes that Plaintiffs' amended complaint sufficiently alleges that Defendant CPI was a "state actor," working in concert with and at the direction of the City of Oklahoma City for purposes of Plaintiff's equal protection claim.

Defendant alternatively argues that it is entitled to dismissal on the basis of common law immunity, that is that it relied, in good faith, on the legal advice provided by Susan Randall.  In short, Defendant CPI seeks qualified immunity.

Government officials performing discretionary functions are shielded from liability of civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  In *Richardson v. McKnight*, 521 U.S. 399 (1997), the Supreme Court held that prison guards at a private, for-profit prison could not assert qualified immunity in a 42 U.S.C. § 1983 action brought by prisoners.

> In reaching this conclusion, the Court reasoned that a private individual is only entitled [to] claim qualified immunity if that claim is supported by historical practice or based on public policy considerations *Id.*  The Court recognized that the purpose[s] served by the qualified immunity doctrine,

namely (1) protection of the public from unwarranted timidity on the part[ ] of public officials, (2) ensuring that qualified candidates are not deterred from entering public service, and (3) reducing the chance that lawsuits will detract public officials from their governmental duties, were not served by extending qualified immunity to private prison guards. *Id.* at 412.

The immunity question [in] *Richardson* is limited to cases dealing with "a private firm, systematically organized to assume a major lengthy administrative task . . . with limited direct supervision by the government." *Id. at 413.* The Supreme Court carefully stated that its holding did not "implicate a private individual briefly associated with a government body, serving as an adjunct to government in an essential government activity, or acting under close official supervision." *Id.* In analyzing the *Richardson* decision, the Tenth Circuit has stated that "[i]n light of this substantial supervision caveat, the courts of appeals have allowed private individuals to assert qualified immunity when the defendants were closely supervised by the government." *Rosewood v. Sunflower Diversified Services*, *Inc.* 413 F.3d 1163, 1167 (10th Cir. 2005).

*Weise v. Casper*, 2006 WL 3093133 (D.Colo. Oct. 30, 2006). As in *Weise*, the Court finds that discovery in this case is necessary to determine whether CPI was closely supervised by the City of Oklahoma City and therefore entitled to assert a qualified immunity defense. Accordingly, the motion to dismiss is DENIED WITHOUT PREJUDICE with regard to Plaintiff's equal protection claim against CPI.

**The City of Oklahoma City**

The City contends that despite being permitted to amend his complaint that Plaintiff has failed to sufficiently allege a policy or custom such that it could be held liable for any underlying constitutional violation that Plaintiff may have pled. In the prior order dismissing Plaintiff's original complaint pursuant to Rule 12(b)(6), the Court noted that to state a claim against Defendant City based upon the acts of Defendant CPI, Plaintiff must allege that

Defendant City directed Defendant CPI go on to Plaintiff's property and begin work on the construction project before Defendant had obtained an easement over Plaintiff's property and that Defendant City did so pursuant to a custom or practice of taking or using city residents' property before being granted an easement *or* that a final policymaker of Defendant City for the relevant subject matter directed Defendant CPI's actions.  *See McMillian v. Monroe County, Ala.*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); *Board of County Commissioners of Bryan County, Okla. v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  *See also Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1330 n. 8 (10th Cir. 2004); *Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995).  Defendant argues that Defendant Susan Randall, an assistant municipal counselor, is not a final policymaker such that the City can be held responsible for her allegedly unconstitutional acts. Defendant asserts that pursuant to the City Charter of the City of Oklahoma City that only the municipal counsel is the final policymaker for the City's legal department.  With regard to Defendant Hart, Defendant City argues that he is not a final policymaker, because the Oklahoma City Municipal Code grants the Chief of Police final policymaking authority.  *See* Oklahoma City Municipal Code, § 43-4.

Defendant acknowledges that Defendants Hart and Randall may possess final policymaking authority via delegation from either the police chief or the municipal counselor, respectively.  At this stage of the litigation the Court is required to accept all of Plaintiff's allegations as true, and Plaintiff is not required to prove that Defendants Hart and

Randall actually possessed this authority, rather he must only allege policymaking authority, which he has done.  Rather, at the summary judgment stage and at trial Plaintiff will be required to present evidence of the delegation of authority.  Accordingly, the City is not entitled to dismissal of the Plaintiff's claims on this basis at this stage of the litigation.

**Defendant Randall**

Defendant Randall, an attorney with the City of Oklahoma City, seeks dismissal of Plaintiff's amended complaint.  She argues that Plaintiff has failed to allege the violation of his constitutional rights, and she further argues that she is entitled to qualified immunity.  As set forth above, Plaintiff has plead an equal protection claim, and thus the sole inquiry with regard to Defendant Randall is whether she is entitled to qualified immunity.

In response to a defense of qualified immunity, a plaintiff must establish that violation of a constitutional right, in this case the equal protection clause, and further, he must establish that at the time of the alleged violation the constitutional right was clearly established.  A right is "clearly established" if Supreme Court or Tenth Circuit case law exists on point or if the "clearly established weight of authority from other circuits" found a constitutional violation from similar actions. *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir.1999).  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations

omitted).  The Court concludes that in 2006 Plaintiff's equal protection rights, even as a "class of one," were clearly established.  As such, Defendant Randall is not entitled to qualified immunity.

### Defendants Hart, Byrne and Osborn

These Defendants similarly seek qualified immunity.  Again, Plaintiff alleges that Defendants treated him differently than other similarly situated property owners.  As with Defendant Randall's motion, the Court concludes that Plaintiff has alleged an equal protection violation and that the right to be treated the same as similarly situated property owners was clearly established in 2006.  Accordingly, at this stage, Defendants are not entitled to qualified immunity on this basis.

Additionally, Defendants cite to *Hollingsworth v. Hill*, 110 F.3d 733 (10th Cir. 1997), in support of their bid for immunity.  *Hollingsworth* was a summary judgment case, distinguishing it from the instant case, which is at the pleading and motion to dismiss stage. The Court in *Hollingsworth* was able to make the factually intense inquiry into the advice offered to the defendants by the district attorneys' office in assessing whether the officers were entitled to qualified immunity.  Because of the posture of this case, the Court is not positioned to make such inquiry at this stage of the litigation.

### CONCLUSION

For the reasons set forth herein, Plaintiff's claims under the takings clause and his due process claims are DISMISSED WITHOUT PREJUDICE.  With regard to Plaintiff's equal protection claims against the Defendants, the motions to dismiss are DENIED.

IT IS SO ORDERED this 6th day of February 2008.


_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE